

FILED

JAN 24 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

## NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| In re | )     Case No. 06-10924-B-7 |
| | ) |
| Richard E. Hare and | )     DC No. UST-1 |
| Melissa E. Hare, | ) |
| | ) |
|       Debtors. | ) |
| | ) |

### MEMORANDUM DECISION REGARDING UNITED STATES TRUSTEE'S MOTION TO DISMISS

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.**

Mark L. Pope, Esq., Assistant U.S. Trustee, appeared on behalf of Sara L. Kistler, Esq., Acting U.S. Trustee (the "UST").

David R. Jenkins, Esq., appeared on behalf of the debtors, Richard E. Hare and Melissa E. Hare (the "Debtors").

     The UST moves to dismiss this case as a "presumed" abuse of chapter 7 pursuant to 11 U.S.C. § 707(b)(2).[1]  In the alternative, the UST contends that the Debtors have sufficient "disposable income" to repay all or a substantial portion of their debts through a chapter 13 plan.  The UST asks that the case be dismissed as an abuse of chapter 7 based on the "totality of the circumstances" pursuant to § 707(b)(3) (the "Motion").  For the reasons set forth below, the Motion will be granted.

---

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (hereafter "BAPCPA").

53

1    This memorandum decision contains the court's findings of fact and conclusions

2    of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

3    contested matter by Federal Rule of Bankruptcy Procedure 7052.  The court has

4    jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 707, and General

5    Orders 182 and 330 of the U.S. District Court for the Eastern District of California.  This

6    is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

7    **Findings of Fact.**

8    The Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy

9    Code on June 26, 2006.[2]  The Debtors filed a joint petition as husband and wife under

10   § 302(a).  However, they have represented in opposition to the Motion that they were

11   permanently separated when the petition was filed.[3]  The Debtors are individuals with

12   primarily consumer debts.  Their scheduled unsecured debts total $88,344 and their

13   scheduled secured debts total $576,089.  Approximately $507,000 of the secured debt

14   represented the first and second mortgages against their home located in Prather,

15   California (the "Residence").

16   The Debtors' combined current monthly income ("CMI") as stated in their latest

17   amended Form B22A is $9,292.07.[4]  Their annualized income (CMI x 12) is $111,504.84.

18

19

20   [2]Hereafter, all relevant events occurred in 2006, unless specifically stated otherwise.

21   [3]Debtor Richard Hare filed a declaration in opposition to the Motion which states,

22   "My wife and I are deeply and permanently estranged.  In my opinion no reconciliation is

23   possible."  Co-debtor, Melissa Hare, filed nothing to corroborate this statement or to
     indicate whether she concurs in the Debtor's opposition to the Motion.  The court notes

24   that Mr. And Mrs. Hare did list separate addresses on their initial petition.

25   [4]Individual chapter 7 debtors, whose debts are primarily consumer debts, are

26   required under BAPCPA to file a Statement of Current Monthly Income and Means Test
     Calculation using approved Form B22A ("Form B22A" or the "Means Test").  The

27   Debtors initially filed a joint Form B22A showing a combined CMI of $8,248.90.  When

28   the UST challenged their Means Test, and requested confirmation of their income, the

1    Individual chapter 7 debtors must "pass" the Means Test (discussed below) if their debts
2    are primarily consumer debts and their annualized income exceeds the applicable median
3    family income in California.  The median family income for a household of two is
4    $55,320.

5            The Debtors stopped making the mortgage payments on the Residence in July,
6    immediately after the filing of this bankruptcy case.[5]  The Debtors filed a Statement of
7    Intention with their bankruptcy schedules which indicates that the Debtors did not intend
8    to keep their Residence.[6]  The Debtors did not bring their mortgage payments current and
9    they did not oppose the first mortgage lender's subsequent motion for relief from the
10   automatic stay.  That motion was granted on October 27.

11   **Issues Presented.**

12           The UST contends that the Debtors' case is presumed to be an abuse of chapter 7
13   because the Debtors' annualized income greatly exceeds the median family income and
14   they have the ability to repay all, or a substantial portion of their debts with "disposable
15   income" through a chapter 13 plan.  §707(b)(2).  The Debtors' disposable income is in

16   _____

17   Debtors filed amended Means Tests showing the higher CMI.  The Debtors each filed a
     separate amended Means Test in an attempt to show that "viewed separately, the debtors
18   would each qualify for Chapter 7 relief."  The court rejects the Debtors' "separate" Means
19   Test analysis.  The relevant figure in this case is the combined income of the Debtors
     because they filed this bankruptcy jointly.  Section 101(10A) defines "current monthly
20   income" as "the average monthly income from all sources that the debtor receives (*or in a*
21   *joint case the debtor and the debtor's spouse receive*) without regard to whether such
     income is taxable income, derived during the [preceding] 6-month period . . . ."
22   (Emphasis added.)

23           [5]See the declaration of Joe Krasovic filed in support of the motion for relief from
24   automatic stay of Mortgage Electronic Registration Systems, Inc.  The motion for relief
25   from stay was filed on September 28.

26           [6]The Debtors' Statement of Intention filed on August 3 states: "NOTE: If the
     Debtors are able to do so they may bring the payments current and reaffirm or sell the
27   property and pay the two mortgage claims.  Otherwise, the Debtors will surrender the
28   property upon the completion of a foreclosure sale."

3

dispute here because they claimed an enormous deduction on their Means Test, $3,827.33 per month, based on contractional mortgage payments for the Residence pursuant to § 707(b)(2)(A)(iii).[7] However, the Residence was effectively surrendered in the bankruptcy. Without the "contractual" deduction, the Debtors would only be allowed a "housing expense" deduction of $1,125 under the Internal Revenue Services' ("IRS") National and Local Housing Standards. § 707(b)(2)(A)(ii). The difference between the "contractual" deduction and the IRS' standard deduction is approximately $2,702 per month which, in theory, could be used to pay creditors. The UST contends that the unsecured creditors in this case would be paid in full through a 60 month chapter 13 plan.

The Debtors respond that the presumption of abuse does not apply because their mortgage deduction should be fixed based upon the contracts in effect as of the commencement of the bankruptcy case. They argue that they are entitled to deduct the contractional mortgage payments for the Residence even though they stopped making the mortgage payments and effectively surrendered the Residence.[8] There appears to be no dispute between the UST and the Debtors that if the contractional mortgage payments are considered, then the Debtors will "pass" the Means Test, meaning that their disposable income will be below the threshold for "presumed abuse" as set forth in § 707(b)(2). Conversely, if the contractional mortgage payments are not considered, then the Debtors will have disposable income well in excess of the threshold which triggers a finding of "presumed" abuse.

---

[7]The Debtors' mortgage payments would have increased significantly over the five year period covered in the Means Test calculation. The Debtors' counsel states that he actually miscalculated and understated the actual average mortgage liability in the original Form B22A.

[8]Some courts have held that debtors are entitled to deduct contractional payments for a house that is surrendered in the bankruptcy. *See In re Hartwick*, 352 B.R. 867, 869-70 (Bankr. D. Minn. 2006). Other courts have reached the opposite result. *See In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006); *See also In re Love*, 350 B.R. 611 Bankr. M.D. Ala. 2006).

4

1    Alternatively, the UST argues that the Debtors' case is an abuse of chapter 7 based

2  on the "totality of the circumstances" under § 707(b)(3).   The Debtors respond that the

3  "totality of the circumstances" analysis is a tautology; that the UST is merely repeating

4  her meritless argument under § 707(b)(2).  Oddly, virtually all of the argument and

5  analysis in the UST's Motion, the Debtors' opposition, and the UST's reply are focused

6  on § 707(b)(2) and the Debtors' ability to deduct their contractual mortgage payments in

7  the Means Test.  However, subsections' 707(b)(2) and (b)(3) are mutually exclusive.  The

8  court need not address the "mortgage deduction" argument relevant to § 707(b)(2), if it

9  finds that there are grounds to grant the Motion based on the "totality of the

10  circumstances" under § 707(b)(3).  Even if the court concludes that the Debtors pass the

11  Means Test without creating a presumption of abuse, it is inconsequential if the case is

12  otherwise "abusive" under § 707(b)(3).  *See In re Paret*, 347 B.R. 12 (Bankr. D. Del.

13  2006) (the term "shall" in § 707(b)(3) "explicitly mandates" consideration of the totality

14  of the circumstances to determine whether abuse exists if the presumption of abuse under

15  § 707(b)(2) does not arise or is rebutted); *see also* Eugene R. Wedoff, *Means Testing in*

16  *the New § 707(B)*, 79 Am. Bankr. L.J. 231, 236 (2005) ("[B]ecause the general abuse

17  provisions of § 707(b)(3) expressly apply when the means test has been rebutted,

18  'passing' the means test does not preclude a discretionary finding of abuse by the court. . .

19  . [I]f a debtor's overall financial circumstances would easily allow the debtor to repay

20  debts . . . the court may find abuse.").

21    The ultimate issue then can be summarized as follows: Is it an abuse of chapter 7

22  pursuant to either § 707(b)(2) or § 707(b)(3) for the Debtors to receive a chapter 7

23  discharge based on a Means Test calculation that includes contractional mortgage

24  payments for the Residence which the Debtors had no intention of keeping, and indeed

25  have surrendered to the mortgagee through foreclosure?

26  **Analysis.**

27  **Overview of 11 U.S.C. § 707(b).**

28    The chapter 7 case of an individual debtor whose debts are primarily consumer

5

1  debts may be dismissed under § 707(b)(1) if the court finds, after notice and a hearing,

2  that the granting of a discharge would be an abuse of chapter 7.  BAPCPA offers two

3  standards for determining the "abuse" issue.  Abuse may be presumed under the objective

4  Means Test prescribed in § 707(b)(2).[9]  The function of the Means Test is to estimate the

5  ability of chapter 7 debtors to repay their debts.  If the debtor's annualized income

6  exceeds the applicable median family income, and the Means Test shows that the debtor

7  has the ability to repay a minimum amount of his or her debts, over a period of five years,

8  then a presumption of chapter 7 abuse arises.[10]

9      Section 707(b)(3) prescribes a more subjective test for abuse based on the "totality

10  of the circumstances."[11]  Unlike the Means Test, the Bankruptcy Code does not define

11  "totality of the circumstances."  In addition, there is a dearth of case law interpreting the

12  phrase under BAPCPA.  Prior to BAPCPA, the Ninth Circuit looked to the "totality of the

13

14      [9]Section 707(b)(2)(A)(i) states in pertinent part:

15      "[T]he court shall presume abuse exists if the debtor's current monthly income
16      reduced by the [allowed deductions] . . . and multiplied by 60 is not less than the
17      lesser of–
            (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or
18      $6,000, whichever is greater; or–
19            (II) $10,000."

20      [10]Pursuant to § 707(b)(2)(B), the presumption of abuse can be rebutted on a
21  showing of "special circumstances" not present here.

22      [11]Section 707(b)(3) provides in pertinent part:

23      (3) In considering under paragraph (1) whether the granting of relief would be an
24      abuse of the provisions of this chapter in a case in which the presumption in
        subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall
25      consider–
26            (A) whether the debtor filed the petition in bad faith; or
            (B) *the totality of the circumstances* . . . of the debtor's financial situation
27      demonstrates abuse.  (Emphasis added.)

28

circumstances" to interpret the term "substantial abuse" in former §707(b).[12] *In re Price*,
353 F.3d 1135, 1139-40 (9th Cir. 2004).  Because Congress retained the phrase "totality
of the circumstances" in BAPCPA, the court may look to pre-BAPCPA case law to
construe the meaning of that phrase under § 707(b)(3).

**This Case is an Abuse Based on the Totality of the Circumstances.**

In *Price*, the Ninth Circuit prescribed some non-exclusive "totality of the
circumstances" factors for courts to consider when reviewing a case for "substantial
abuse":

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

(4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*In re Price*, 353 F.3d at 1139-40.

The court in *Price* went on to state that the debtor's ability to repay his debts is the
primary factor in determining substantial abuse; "The primary factor defining substantial
abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter
13 plan. Thus, we have concluded that a 'debtor's ability to pay his debts will, standing

---

[12]Prior to BAPCPA, the court was required to find "substantial abuse" based solely on the "totality of the circumstances" test.  The Code also fixed a presumption against abuse in favor of the debtor.  With the enactment of BAPCPA, the term "substantial" was deleted from the statute.  BAPCPA also dropped the presumption in favor of the debtor. Because BAPCPA lowered the "abuse" standard, the former "substantial abuse" factors are still relevant to the new "abuse" inquiry.

1  alone, justify a section 707(b) dismissal.'" *Id.* at 1140 (quoting *Kelly v. Kelly (In re*

2  *Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988)).

3      In a post-BAPCPA decision, the use of pre-BAPCPA § 707(b) jurisprudence was

4  considered by a bankruptcy court in the Northern District of California in the case of *In re*

5  *Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006). In that case, the court opined:

6      The Court also finds instructive section 707(b)(3)'s use of the phrase "the totality
       of the circumstances." Prior to BAPCPA, courts considered whether to dismiss a
7      consumer case for "substantial abuse" under section 707(b)(1) based on the
       "totality of the circumstances." See *In re Price*, 353 F.3d 1135, 1139 (9th
8      Cir.2004). All courts considered the debtor's ability to pay to be an important
       factor in this context. It would be counterintuitive to construe this same phrase, as
9      used in BAPCPA, to exclude a consideration of the debtor's ability to pay.

10  *Id.* at 243.

11      Turning now to the facts of this case, it appears that at least two of the *Price*

12  factors are immediately and materially applicable. The Debtors have enjoyed a combined

13  annual income that is more than double the applicable median family income in

14  California. They are no longer burdened with an oppressive mortgage payment which

15  consumed over 40% of their combined (pre-tax) income. Their combined income appears

16  to be sufficient to pay a substantial portion of their unsecured debts through a chapter 13

17  plan, even if they have to do so separately after a divorce.[13] There is no showing that the

18  Debtors filed this joint petition as a result of illness, disability, unemployment, or

19  calamity. The Debtors' attempt to claim a substantial Means Test deduction for a

20  mortgage payment which they never intended to pay, and which in fact ceased to exist

21  after they filed for bankruptcy protection, is a further "circumstance" which suggests that

22  a chapter 7 discharge would be an abuse in this case.

23      The Debtor argues that he will incur an additional living and legal expense

24  associated with his separation and possible divorce. Undoubtedly he will. However, he

25  _____

26      [13]The court will not here adjudicate how much actual "disposable income" each
27  Debtor may have as a result of their separation, or what percentage of the debts must be
    paid to confirm a chapter 13 plan. That determination requires the input of the chapter 13
28  trustee and is properly left to the chapter 13 confirmation process.

1  fails to show that these additional expenses will prevent the Debtors collectively from
2  repaying at least a substantial portion of their debts in chapter 13.  In the case of *In re*
3  *Hebbring*, 463 F.3d 902 (9th Cir. 2006), the Ninth Circuit affirmed the dismissal of a
4  chapter 7 case for *substantial* abuse where the debtor could afford to pay as little as 27%
5  to her unsecured creditors over three years.  *Id.* at 908-09.

6  **Conclusion.**

7      Based on the foregoing, the court finds and concludes that a discharge in this case
8  would be an abuse of chapter 7 under § 707(b)(3).  Accordingly, the UST's motion to
9  dismiss will be granted as to both Debtors unless one or both of the Debtors voluntarily
10 convert their case to chapter 13 and file a chapter 13 plan within 10 days from service of
11 this ruling.  If the case is not so converted, or if only one Debtor elects to convert to
12 chapter 13, then the UST shall submit an order dismissing whatever portion of this case
13 remains in chapter 7.

15     Dated: January ___24___, 2007

17
18               W. Richard Lee
           United States Bankruptcy Judge

9

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

David Jenkins
PO Box 1406
Fresno, CA 93716

Melissa Hare
9360 Blackston Ave #184
Fresno, CA 93720

Richard Hare
PO Box 131
Prather, CA 93651

Sheryl Strain
PO Box 25190
Fresno, CA 93729

Mark Pope
2500 Tulare St #1401
Fresno, CA 93721

DATED: 1/24/07

By: *Leticia Putruski*
Deputy Clerk

EDC 3-070 (New 4/21/00)